**MINUTE ENTRY**
**KNOWLES, M.J.**
**MAY 18, 2011**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                        **CRIMINAL ACTION**

**VERSUS**                                          **NO. 10-124**

**TAMARA SCOTT-LANDRY, ET AL.**                     **SECTION "J" (3)**

### REPORT AND RECOMMENDATION

On this date, defendant's Request for Bill of Particulars [Doc. #94] and Motion for Production of Exculpatory Materials and Confidential Informant [Doc. #95] came on for oral hearing before the undersigned.  Present was Gaven Dall Kammer on behalf of the United States of America ("the government").  Counsel for defendant failed to appear.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motions, the oppositions, the case law and the parties' oral arguments, the Court rules as follows.

### I.      Background

The superseding indictment alleges as follows.  Defendant owned and ran Scott's Accounting Services and prepared and submitted federal income tax returns to the Internal Revenue Service ("IRS").  She obtained Electronic Filers Identification Number ("EFIN") 721208. The EFIN allows

MJSTAR(00:04)

a preparer to electronically prepare and transmit via a computer tax returns to the IRS.

Defendant married co-defendant Warren S. Lebeauf, Jr. in 2006.  The St. Charles Parish Sheriff's Office had employed Lebeauf since 1989, and he had earned the rank of lieutenant. Through his employment, Lebeauf had the ability to obtain individuals' personal information including names, dates of birth, and social security numbers through the Louisiana Law Enforcement Telecommunications System ("LLETS").  The St. Charles Parish 911 Call Center accesses the LLETS.

The government alleges that defendant and Lebeauf engaged in a conspiracy to defraud the United States by obtaining and aiding to obtain the payment of false, fictitious and fraudulent claims for federal tax refunds.  Defendants provided the names of individuals, both prison inmates and others, to the St. Charles Parish 911 Call Center to retrieve personal information from the LLETS. After obtaining the individuals' personal information, defendants filed fraudulent tax returns and received tax refunds, which they then deposited in their own personal bank accounts and spent. Defendants also obtained stored value cards and debit cards on to which they transmitted the tax refunds.  Defendants both used the stored value cards and debit cards and sold some of them for profit.

In a 90-count superseding indictment, the government charges defendants Scott-Landry and Lebeauf with conspiracy, false claims against the United States, wire fraud, aggravated identity theft and false statements to an agency of the United States, all in violation of 18 U.S.C. §§ 2, 286, 287, 1001, 1028A and 1343.  The motions under submission address only defendant Scott-Landry.

## II.     Defendant's Request for a Bill of Particulars

### A.     The Parties' Contentions

1.      **Defendant**

Defendant asks for a bill of particulars on the following subjects:

(1)      Has defendant ever had any other EFIN?

(2)      Has defendant ever had any other Internet Protocol ("IP") Address other than
68.11.108.244?

(3)      What did the government provide to defendant to support the allegations in counts
two through 88?

(4)      In connection with the allegations, does the government rely on any oral statements
from an unnamed source lawfully intercepted under 18 U.S.C. § 2510 *et seq.* or
unlawfully intercepted under 18 U.S.C. § 3504?

(5)      Identify all persons on whose statements the government will rely, provide the
substance of their testimony and the counts as to which each person will testify.

(6)      With regard to counts two through 88, provide (a) the IP address used; (2) the status
of the IP address; (3) the EFIN used; (4) the status of the EFIN; (5) whether value
cards were obtained and when and where they were used, who used them, the details
of the transaction, the physical evidence to support the transaction and who will
testify as to the transaction.

(7)      All physical evidence seized from or provided by defendant that the government will
NOT use at trial.

(8)      All notes of conversations with defendant and any other persons interviewed.

(9)      As to overt act number one for counts two through 88, what information was
obtained through the LLETS, when and who obtained the information and how is

such information stored.

(10)    As to overt acts two, three and four for counts two through 88, what information did defendant receive from Lebeauf, when did defendant enter the information, what IP address and EFIN did defendant use and the status of the IP address and EFIN.

(11)    As to overt acts four through seven for counts two through 88, the identification number on each tax product and when, where, by whom, through what institution each tax product was used and the amount.

Plaintiff asks that all documents that support each count be provided, and, if already provided, the bates-numbers of the documents.

**2.      The Government**

The government notes that on June 24, 2010, the government handed defendant 1251 pages of discovery. The discovery detailed and allegedly supported the allegations in the indictment and included: 1) all fraudulently filed tax returns and accompanying internal IRS transcripts; 2) IP address registration; 3) EFIN registration; 4) bank records; 5) bank photographs; 6) tax product processing records; 7) IRS correspondence with defendant; 8) LLETS printouts; 9) Department of Corrections records and many other items.  The government also provided defendant with all pertinent witness memoranda of interviews, and bank account analyses and summary charts of evidence compiled by the IRS.  The government also twice informed defendant that several boxes were available for inspection at the IRS.  Defendant has not yet reviewed these boxes.

With regard to request numbers one and two, the government contends that the indictment sufficiently details the charge and that the information is within defendant's personal knowledge.

With regard to request number three, the government argues that defendant is not entitled

4

to its theory of prosecution or a preview of the government's case-in-chief.

With regard to request number four, the government responds that it intercepted no communications during the investigation.

With regard to request number five, the government argues that defendant is not entitled to its theory of prosecution or a preview of the government's case-in-chief. The government will provide any Jencks material of testifying witnesses to defendant on the Friday before trial pursuant to local practice.

With regard to request number six, the government contends that defendant is not entitled to the government's theory of prosecution or a preview of the government's case-in-chief. Defendant has been provided with abundant discovery with regard to the allegations in the indictment. Defendant has been provided with the government's exhibit list which will be updated if the government adds any new evidence in preparation for trial.

With regard to request number seven, the government asserts that the indictment sufficiently details the offenses against defendant. In any event, the search warrant materials are in the boxes of documents stored at the IRS that the government made available to defendant on June 24, 2010 and that defendant has yet to review.

With regard to request number eight, the government contends that it has complied with its Rule 16 obligations with regard to statements of defendant. Defendant will be provided with Jencks and *Giglio* material for testifying witnesses on the Friday before trial, pursuant to local practice. In any event, although not legally required, the government also provided defendant with memoranda of witness interviews on June 24, 2010.

With regard to request number nine, the government argues that defendant is not entitled to

the government's theory of prosecution or a preview of the government's case-in-chief.   In any event, all information obtained from the LLETS system is in the boxes made available to defendant on June 24, 2010 and that defendant has yet to review.

With regard to requests number ten and 11, the government maintains that defendant is not entitled to the government's theory of prosecution or a preview of the government's case-in-chief. Defendant has been provided with abundant discovery with regard to the allegations in the indictment.  The government has provided a copy of its exhibit list to the defendant which will be updated if the government adds new evidence in preparation for trial.

### B.    Law and Analysis

"The purpose of a bill of particulars is to apprise a defendant of the charges against him with enough detail to allow him to prepare his defense." *United States v. Kirkham*, 129 Fed. Appx. 61, 71 (5th Cir. 2005) (citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983)); *see also United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978).  "A bill of particulars is not required if a defendant is otherwise provided . . . with sufficient information to enable him to prepare his defense and avoid surprise." *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991).  "A defendant should not use the Bill of Particulars to 'obtain a detailed disclosure of the government's evidence prior to trial.'"  *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *United States v. Perez*, 489 F.2d 51, 70–71 (5th Cir. 1973)).  It is not designed to compel the government to produce a detailed exposition of its evidence or to explain the legal theories on which it intends to rely at trial.  *United States v. Burin*, 621 F.2d 1352, 1359 (5th Cir. 1980).

Where evidence and information sought by a defendant is within her knowledge or can be readily obtained by her, she is not entitled to a bill of particulars.  *United States v. Cole*, 755 F.2d

748, 760 (11th Cir. 1985). Furthermore, where the government has provided broad discovery, the need for a bill of particulars is reduced. *United States v. Torres*, 901 F.2d 205, 234 (2nd Cir. 1990).

The Court finds that a bill of particulars is unnecessary in this case. The superseding indictment sufficiently apprises defendant of the charges against her and the details of the alleged transactions, including the dates, amounts and name codes associated with each allegedly illegal transaction. In addition, the government has provided extensive discovery to defendant, including several boxes that defendant has not yet deigned to review. Accordingly, defendant's request for a bill of particulars is denied. To the extent that defendant's request for a bill of particulars seeks documents and/or information under *Brady*, *Giglio*, and/or the Jencks Act, the Court addresses such requests below.

## III.   Defendant's Motion for Production of Exculpatory Materials and Confidential Informant

### A.   The Parties' Contentions

#### 1.   Defendant

Defendant lists 35 items that it seeks from the government under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The items are listed in defendant's motion [Doc. #95], and the Court will not repeat them here.

#### 2.   The Government

The government contends that defendant's list constitutes an unprecedented expansion of the *Brady* and/or *Giglio* doctrines. The government contends that defendant provides absolutely no support that requests numbered 2, 3, 12, 13, 17, 20, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34 constitute *Brady* material. The government argues that it is aware of its *Brady* obligation and will comply with it.

The government notes that the majority of what defendant seeks is impeachment material for government witnesses.  Trial is six weeks away, and the government has not identified which witnesses it will call to testify.  The government notes that it understands its obligation under *Giglio* and will turn over all *Giglio* and Jencks material 48 hours before trial pursuant to local practice.

## B.      Law and Analysis

*Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The government generally has no obligation to turn over any exculpatory material of which the defense is already aware.  *See Lovitt v. True*, 403 F.3d 171, 185 (4th Cir. 2005) ("*Brady* only applies when evidence is known to the prosecution but unknown to the defense") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  Furthermore, the government has no obligation if the information is available to the defendant through the exercise of diligence.  *See United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997) ("State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence."); *United States v. Serfling*, 504 F.3d 672, 678-79 (7th Cir. 2007) (no *Brady* violation when government made documents available for defendant's review).

In addition, there is no requirement that *Brady* or *Giglio* material be produced in pre-trial discovery.  *United States v. Davis*, Co. Cr. A. 01-282, 2003 WL 1825602, *2 (E.D. La. Apr. 8, 2003).  As noted above, under *Brady v. Maryland*, prosecutors have a duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment.  *See Brady*, 373 U.S.

at 87.  This includes evidence that would materially impeach a government witness, *e.g.,* by showing

bias or interest.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Bagley*, 473

U.S. 667, 676 (1985).  The Fifth Circuit has stated, "[ ] *Brady* is not a discovery rule, but a rule of

fairness and minimum prosecutorial obligation."  *United States v. Beasley*, 576 F.2d 626, 630 (5th

Cir. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).  Therefore, *Brady* "is not a

pretrial remedy."  *See United States v. Garrett*, 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J.,

concurring) (quoting *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)).  Rather, a *Brady*

violation becomes a concern for courts only after trial, when courts are able to determine whether

a non-disclosure deprived a defendant of a fair trial.  *See id.* at 303-04 (citing cases).  The Fifth

Circuit has therefore held that a "prosecutor's compliance with the Jencks Act provided timely

disclosures under *Brady*."  *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (citing

cases).  The Fifth Circuit has also held that there was no prejudice to the defendant when the

government disclosed *Brady* information to the defendant during its case-in-chief.  *See United States

v. Neal*, 27 F.3d 1035, 1050 (5th Cir. 1994).  Lastly, the Fifth Circuit has held that there is no

violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial.  *See

Hill v. Black*, 887 F.2d 513, 517 (5th Cir. 1989), *vacated on other grounds by* 198 U.S. 801 (1990);

*see also United States v. Martinez-Perez*, 941 F.2d 295, 301 (5th Cir. 1991) (reaffirming the *Giglio*

aspect of *Hill*).  Thus, if the government produces *Brady* material to defendant as it receives such

material, no violation of *Brady* occurs.

Defendant has cited no authority for the proposition that the government must disclose

witness statements during pre-trial discovery, or that the government must disclose statements of

witnesses it chooses not to call to the stand.  Many circuits have held that, under the Jencks Act, the

government has no obligation to disclose the statements of witnesses who do not ultimately testify. *See, e.g., United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir.1984) (citing *United States v. Mills*, 641 F.2d 785, 789-90 (9th Cir. 1987) (Judge, now Justice, Kennedy). And clearly under the Jencks Act, the government can not be compelled to disclose the statements of their testifying witnesses until after they testify on direct. 18 U.S.C. § 3500(b); *United States v. Ramirez*, 174 F.3d 584, 587 (5th Cir. 1999).

The situation here is one of timing, not of suppression. Defendant has made no showing of prejudice of a substantial due process character in this case. The government indicates that it is aware of its *Brady*, *Giglio*, and Jencks obligations. It states that, while not legally required, it has provided defendant with the memoranda of witness interviews on June 24, 2010. As noted, the government will provide defendants with all *Giglio* and Jencks material at least 48 hours before trial, as is the practice in this circuit. Nothing more is required. Defendant has not provided this Court with a viable legal justification for ordering the pre-trial discovery of the materials in question.

## IV.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that defendant's Request for Bill of Particulars [Doc. #94] be DENIED and Motion for Production of Exculpatory Materials and Confidential Informant [Doc. #95] be GRANTED IN PART but only to the extent that the government comply with its *Brady*, *Giglio* and Jencks obligations pursuant to the case law and the practices in this circuit.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after

being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge;

and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the

district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d

1415, 1430 (5th Cir. 1996) (*en banc*).


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

11